**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Transstar Industries, Inc.,** ) | **CASE NO. 1:15 CV 757** |
| ) | |
| **Plaintiff,** ) | **JUDGE PATRICIA A. GAUGHAN** |
| ) | |
| vs. ) | |
| ) | |
| **Ann Manseau, et al.,** ) | **Memorandum of Opinion and Order** |
| ) | |
| **Defendants.** ) | |

### Introduction

This matter is before the Court upon defendant Ann Manseau's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 11). The issue is whether the Court has personal jurisdiction over this defendant. For the following reasons, the motion is DENIED.

### Facts

Plaintiff Transtar Industries, Inc. filed this Complaint against defendants Ann Manseau and Whatever It Takes Transmissions[1] (hereafter, WIT). Jurisdiction is based on diversity as Manseau is a citizen of Florida, WIT is a citizen of Kentucky, and plaintiff is a citizen of Ohio.

---

[1] Moving defendant states the correct name of this defendant is Whatever It Takes Transmissions & Parts, Inc.

1

The Complaint alleges the following. Plaintiff and WIT are both in the business of distributing transmission-related products, automotive specialty repair and refinishing products, and high performance parts and accessories. Plaintiff has its principal place of business in Ohio. It transacts business throughout this State and nationally. Manseau was employed by plaintiff from 1991 until February 2015. Her last position with plaintiff was as a home-based sales representative, reporting to one of plaintiff's branches in Maryland. Manseau was a top sales employee and had access to plaintiff's valuable and confidential information as to pricing and customers. Despite negotiations by plaintiff to continue Manseau's employment, she terminated her employment with plaintiff after giving notice of such.

Following her separation from plaintiff, Manseau accepted employment with WIT to begin WIT's operations in the Maryland area. Prior to her separation from plaintiff, Manseau engaged in the unauthorized acquisition, copying, disclosing, and use of plaintiff's valuable and confidential information including plaintiff's customers, customer contacts, and pricing information. She used the information to solicit and divert plaintiff's customers away and to benefit herself and WIT. Following her separation, Manseau continued to engage in the unauthorized use of plaintiff's valuable and confidential information by contacting plaintiff's customers and using the information to take the customers away from plaintiff and to WIT.

Six counts are alleged: misappropriation of trade secrets (Count 1), tortious interference with economic and/or business relations (Count 2), tortious interference with economic and/or business relation (Count 3), breach of the duty of loyalty (Count 4), deceptive trade practices (Count 5), and injunctive relief (Count 6).

As they are permitted to do, the parties submit evidence in the form of affidavits and

declarations. Manseau submits an affidavit with her motion and a declaration with her reply brief. Plaintiff submits two declarations, that of Kevin Piekarski and Danny Markley. The affiants and declarants state the following.

In her affidavit, Manseau states that she worked for plaintiff since 1991 as a home based sales representative with a sales area in the Baltimore/Washington D.C. area, where she lived until she moved to Florida in January 2014. After she moved to Florida, she continued to sell for plaintiff in the Baltimore/Washington D.C. area from her home in Florida. She has never traveled to Ohio or had any contacts with this State other than "one occasional customer who would make small purchases of transmission parts in Ohio when [she] was with Transtar." While working for plaintiff, Manseau reported to a supervisor in Maryland. Manseau now services and sells to clients in the Baltimore/Washington D.C. area for WIT, which she joined in February 2015.

Kevin Piekarski is a Vice President for plaintiff, based at plaintiff's headquarters in Walton Hills, Ohio. Plaintiff has 76 locations throughout the United States and Puerto Rico. In 1996, Manseau executed a Confidentiality and Trade Secret agreement with plaintiff. Piekarski refers to Manseau's position as Account Representative. She was assigned to plaintiff's Beltsville, Maryland branch. She moved to Florida, a year prior to her resignation, where she worked from her home but was still assigned to the Beltsville, Maryland branch. At the time of Manseau's departure, Piekarski was Vice President- North Region. The Beltsville, Maryland branch was in the North Region. Account Representatives have regular and ongoing contacts with headquarters. For example, although Account Representatives report to a Branch Manager, human resources issues (such as FMLA leave, complaints, and investigations) are handled by

3

headquarters. Pricing, product offerings, and warranty services are provided by headquarters. Wages, paid via direct deposit, are processed by headquarters as are customer-related expenses submitted by employees. Account Representatives regularly communicate with headquarters on pricing, product information, and any orders made directly from vendors. Training and other communications are directed through headquarters. Warranty services are handled by headquarters and, thus, Account Representatives communicate with headquarters when addressing this issue for customers. A review found that Manseau sent 62 emails to headquarters in the final two months of her employment with plaintiff. Following Manseau's notice to plaintiff that she planned to leave, Piekarski engaged in phone calls and emails with her in an attempt to negotiate her continued employment. He asked Manseau to travel to headquarters, but she refused. At the time of her resignation, one of Manseau's customers was located in Ohio.

Danny Markley is an Account Representative for plaintiff in the same Maryland region where Manseau worked. All Account Representatives have the same duties and responsibilities. As an Account Representative, he reports to the Beltsville, Maryland branch manager and regional manager on a day to day basis. His general sales responsibilities are directed from outside the branch by plaintiff's offices in Cleveland, Ohio. He has daily interactions (including phone calls and emails) with plaintiff's Cleveland, Ohio office. In particular, he contacts the Cleveland office regarding warranties and special offers, questions about certain vendors, and pricing and customer issues.

In her declaration submitted with her reply brief, Manseau states that she was supervised daily by the Beltsville, Maryland branch manager and rarely spoke with Piekarski. She did not report to, or interact with, a Regional Manager (located in Ohio) on a daily basis. She submitted

4

her expense reports to her supervisor in Maryland. She did not call Piekarski to negotiate her continued employment with plaintiff, but he called her.

This matter is now before the Court upon defendant Ann Manseau's Motion to Dismiss for Lack of Personal Jurisdiction.

**Discussion**

The plaintiff always bears the burden of establishing that personal jurisdiction exists. *Serras v. First Tennessee Bank National Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). The plaintiff's burden is to make a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) A *prima facie* showing is made by "establishing with reasonable particularity sufficient contacts between [defendant] and the forum state to support jurisdiction." *Neogen Corporation v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal citations omitted).

The Sixth Circuit has clearly set forth the standard of review in a diversity case, as alleged to be the basis of subject matter jurisdiction here:

> [A] plaintiff must satisfy the state-law requirements for personal jurisdiction. Thus, [the plaintiff] must demonstrate that both due process and Ohio's long-arm statute are satisfied. We have recognized that Ohio's long-arm statute is not coterminous with federal constitutional limits. Therefore, we begin by analyzing whether the requirements of Ohio's long-arm statute are met and then separately consider whether the exercise of jurisdiction would comport with due process.

*Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2012) (citations omitted). Ohio's long-arm statute, establishing a statutory basis for jurisdiction over foreign defendants, states:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;

5

> (2) contracting to supply services or goods in this state;
>
> (3) Causing tortious injury by an act or omission in this state;
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
>
> (6) causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
>
> (7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;
>
> (8) Having an interest in, using, or possessing real property in this state;
>
> (9) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Ohio Rev.Code § 2307.382(A).

If the exercise of jurisdiction is proper under this statute, the Court looks to whether due process is satisfied:

> There are two forms of personal jurisdiction: general and specific. General jurisdiction is found where contacts are so continuous and systematic as to render a foreign defendant essentially at home in the forum State. Specific jurisdiction depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.
>
> \*\*\*
>
> [Specific jurisdiction employs a three-part analysis:] (1) purposeful availment of the

6

>privilege of acting in the forum state or causing a consequence in the forum state, (2) a cause of action arising from activities in the state, and (3) a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Schneider,* 669 F.3d at 701 (citations and internal quotation marks omitted).

However, "It is clear under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute." *Conn v. Zakharov*, 667 F.3d 705, 718 (6th Cir.2012). Where a plaintiff fails to meet his burden of establishing personal jurisdiction under Ohio's long-arm statute, there is no need to analyze the due process requirements. *Id.* ("In other words, if jurisdiction is not proper under Ohio's long-arm statute there is no need to perform a Due Process analysis because jurisdiction over the defendant cannot be found.")

Finally, the evidence is viewed in a light most favorable to plaintiff when it is conflicting, *Burnshire Development, LLC v. Cliffs Reduced Iron Corp.*, 198 Fed.Appx. 425, 429 (6th Cir.2006), and the Court does not weigh the controverting assertions of the party seeking dismissal. *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir.1991).

Plaintiff argues that the exercise of personal jurisdiction is proper under Ohio Rev.Code § 2307.382(A)(1),(4),and (6), above.  Plaintiff relies primarily on *Evenflo Company, Inc. v. Augustine,* 2014 U.S.Dist. LEXIS 91633 (S.D.Ohio July 7, 2014).  There, the district court exercised personal jurisdiction over a non-resident defendant employee who operated plaintiff's plant in Mexico and improperly used company funds and materials for his own personal benefit. The defendant had signed, as a requirement of his employment, a covenant not to compete which stated that any disputes related to the covenant would be resolved in Ohio under Ohio law. He made periodic trips to Ohio to meet with and report to his supervisors about the status of the

7

Mexican plant. The court concluded that § 2307.382(A)(1) conferred personal jurisdiction because defendant

> knew that Evenflo was located in Ohio and he was working for an Ohio company even though he was responsible for the operations of the Tijuana Plant in Mexico. On an ongoing basis, [defendant] communicated with his supervisors and other individuals located in Ohio. He admits that he traveled to Ohio on several occasions to meet with Evenflo executives and sign relevant documents. Even though [defendant] worked in Mexico, he reported to Evenflo in Ohio. Also, his compensation was administered from Ohio and his company credit card was billed to Ohio.

The court also found § 2307.382(A)(4) to be satisfied where defendant caused tortious injury to plaintiff in the form of conversion and civil theft from his conduct in Mexico and he engaged in a persistent course of conduct in Ohio because he received his paychecks from Ohio, communicated with supervisors in Ohio, his company credit card bills were sent to plaintiff in Ohio, and he visited Ohio to meet with company employees on several occasions. Finally, the court found § 2307.382(A)(6) to be satisfied where defendant could reasonably have expected plaintiff to be injured in Ohio from his tortious acts of theft and unauthorized payments.

As noted by plaintiff, *Evenflo* relies on several district court cases which also exercised personal jurisdiction over non-resident employees. *Coast to Coast Health Care Services v. Meyerhoffer,* 2012 U.S.Dist. LEXIS 6250 (S.D.Ohio 2012), *Rexam Healthcare Packaging, Inc. v. Osiris Medical, Inc.,* 2010 U.S.Dist. LEXIS 21702 (N.D.Ohio 2010), and *The Rightthing, LLC v. Brown,* 2009 U.S.Dist. LEXIS (N.D.Ohio 2009).

Plaintiff contends the situation here is analogous to these cases because plaintiff is headquartered in Ohio, directs its sales and human resources functions out of Ohio, conducts payroll and direct deposits out of Ohio, and processes expenses out of Ohio. Plaintiff also asserts that Manseau negotiated for her continued employment with plaintiff through her

8

contacts with Ohio and had Ohio customers.  Additionally, plaintiff maintains that Manseau's contact with Ohio occurred daily,  involving communications as to sales, warranties,  product offering, pricing, and orders, all of which were functions vital to her position. The daily communications with Ohio created her knowledge of Transtar's confidential customer information and gave rise to her use of that information leading to Transtar's injury and this suit.

Although this Court does not find the facts in the cases referenced above to be directly on point, the Court concludes that plaintiff has demonstrated that Manseau, at a minimum, transacts business in Ohio so that the long-arm statute has been satisfied.  Kevin Piekarski states that pricing, product offerings, and warranty services are "provided" by headquarters. He states that "as with other Account Representatives, [Manseau] had to regularly communicate with headquarters on pricing, product information, and any orders made directly from vendors." Certain sales/customer service related functions, such as warranty services, certain product lines, direct vendor orders, and product offerings, are only performed by headquarters which would require Account Representatives who handle these issues for customers to communicate with headquarters. [2] Danny Markley's testimony also shows that Account Representatives contact the Cleveland, Ohio office regarding warranties and special offers, questions about certain vendors, and pricing and customer issues.  The Court also notes that Manseau had one customer in Ohio.

Ohio's long arm statute requires that the damages at issue arise from the defendant's contacts with Ohio and that there be a proximate cause relationship between the two. *JM-Nipponkoa Ins. Co., Ltd. v. Dove Transp., LLC*, 2015 WL 145041 (S.D.Ohio 2015)(citing

---

[2] As stated above, this Court does not weigh the controverting assertions of Manseau.

9

*Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir.2006)). The Court finds this to be satisfied given that plaintiff's evidence of the daily communications is proximately related to its claims of Manseau's misuse of confidential customer information.

On this basis, the Court may properly exercise personal jurisdiction over defendant Manseau in accordance with Ohio's statute. Having found the statute to be satisfied, the Court proceeds to whether due process is satisfied consistent with the three part test set forth above. The first prong is met because it is the same as Ohio's "transacting any business" standard. *Burnshire Development, LLC v. Cliffs Reduced Iron Corp.*, 198 Fed.Appx. 425 (6th Cir. 2006). The Court also finds the second prong to be satisfied for the same reasons that it has found Manseau's contacts with Ohio to be related to the operative facts of the controversy. *See CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir. 1996). Finally, the third prong is typically met when the first two prongs are met and "an inference arises that the third... is also present." *Evenflo, supra* (citing *First National Bank of Louisville v. J.W. Brewer Tire Co.,* 680 F.2d 1123 (6th Cir. 1982)). The Court finds that it is reasonable for personal jurisdiction to exist over Manseau.

### Conclusion

For the foregoing reasons, defendant Ann Manseau's Motion to Dismiss for Lack of Personal Jurisdiction is denied.

       IT IS SO ORDERED.

                               /s/ Patricia A. Gaughan  
                              PATRICIA A. GAUGHAN  
Dated: 8/31/15                United States District Judge